1  LOCKRIDGE GRINDAL NAUEN P.L.L.P.
   REBECCA A. PETERSON (241858)
2  100 Washington Avenue South, Suite 2200
3  Minneapolis, MN 55401
   Telephone: (612) 339-6900
4  Facsimile: (612) 339-0981
   E-mail: rapeterson@locklaw.com
5
6  [Additional Counsel on Signature Page]
7
   Attorneys for Plaintiff
8
9
                    **UNITED STATES DISTRICT COURT**
10
11                  **CENTRAL DISTRICT OF CALIFORNIA**
12

| | |
|---|---|
| 13 TRISHA BRENNER, individually and on behalf of all others similarly situated, | Case No.  2:20-cv-10245 |
| 14 | |
| 15 | **CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** |
| 16            Plaintiff, | |
| 17 | |
| 18 v. | 1. Fraud by Omission; |
| 19 | 2. Fraudulent Misrepresentation; |
| 20 PETS GLOBAL, INC., a corporation, | 3. Breach of Implied Warranty; 4. Unjust Enrichment; |
| 21 | 5. Violation of the California Consumer Legal Remedies Act; |
| 22            Defendant. | and |
| 23 | 6. Violation of the California Unfair Competition Law. |
| 24 | |
| 25 | **DEMAND FOR JURY TRIAL** |
| 26 | |
| 27 | |
| 28 | |

---
1
CLASS ACTION COMPLAINT

## NATURE OF THE ACTION

1.    Plaintiff Trisha Brenner ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her undersigned attorneys, brings this Class Action Complaint against Defendant Pets Global, Inc. ("Defendant"), due to its negligent, reckless and/or intentional practices for failing to disclose and making partial misrepresentations and false and misleading statements about the risk of canine dilated cardiomyopathy ("DCM") associated with feeding dogs grain-free diets such as Defendant's grain-free dog food products ("Dog Foods").[1]

2.    Defendant made false, misleading, and deceptive omissions and partial misrepresentations to consumers concerning the safety and health benefits to dogs who eat grain-free diets, such as its Dog Foods. Specifically, Defendant was aware that grain-free diets are associated with the risk of DCM. Despite this, Defendant failed to disclose the risk of DCM on its packaging, and instead reaped the benefits from its continued promotion of its Dog Foods as healthy, safe, and of "superior nutrition."

3.    Moreover, no reasonable consumer would believe Defendant would continue to promote the safety and health benefits of its Dog Foods without also

---

[1] Defendant's "Dog Foods" include the following grain-free formulas: Catfish, Duck, Goat, Guinea Fowl, Kangaroo, Lamb, Pork, Salmon, Small Bites for Small Breeds, Trout and Salmon Meal, Turkey, Venison, Whitefish, and Zssential.

disclosure, warning, or otherwise notifying consumers about the association of such diets with a disease as significant and consequential as DCM.

4.    Plaintiff seeks both injunctive and monetary relief on behalf of the proposed Classes (as defined herein) including requiring full disclosure of the risk of DCM in Defendant's marketing, advertising, and labeling, and restoring monies to the members of the proposed Class. Plaintiff alleges the following based upon personal knowledge as well as investigation by counsel and as to all other matters, upon information and belief.

## JURISDICTION AND VENUE

5.    This Court has original jurisdiction over all causes of action asserted herein under the Class Action Fairness Act, 28 U.S.C. §1332(d)(2), because the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs and Plaintiff and the Class members are citizens of States different than Defendant, and therefore any discretionary exemptions to jurisdiction under 28 U.S.C. §1332(d)(3) do not apply.

6.    Venue is proper in this Court pursuant to 28 U.S.C. §1391, because a substantial part of the acts and transactions giving rise to this action occurred in this District. Defendant also conducts substantial business in this District, has intentionally availed itself of the laws and markets of this District, and is subject to personal jurisdiction in this District.

CLASS ACTION COMPLAINT

## **PARTIES**

7.    Plaintiff lived in Buffalo, New York from May 2016 to July 5, 2016. As of July 6, 2016, Plaintiff is now, and at all times relevant hereto has been an individual citizen and resident of the state of Massachusetts. From approximately May 2016 until November 2018, Plaintiff purchased Defendant's Zignature Kangaroo Formula brand dog food from Chewy.com, Pet Supplies Plus and Especially for Pets to feed her Weimaraner, Charlie.

8.    Plaintiff saw and reasonably relied upon Defendant's false, misleading, and deceptive representations, marketing, and warranties regarding its claims about the Dog Foods' safety and health benefits.

9.    Plaintiff was unaware of Defendant's omissions and partial misrepresentations and false, misleading, and deceptive statements regarding the safety and health qualities associated with the Dog Foods, and was unaware of the risk associated between Defendant's Dog Foods and DCM. When Plaintiff learned of Defendant's omissions and partial misrepresentations and false, misleading, and deceptive statements, she stopped purchasing the Dog Foods. Plaintiff would not have purchased the Dog Foods if Defendant had fully and truthfully disclosed the risk of DCM.

10.    Plaintiff, like other consumers, reasonably relied on Defendant's omissions and partial misrepresentations and statements that its Dog Foods were safe and healthy, with no associated risk of DCM. Plaintiff, like other consumers, had no

4

reason to know the Dog Foods were not as represented by Defendant or were associated with a risk of DCM.

11.    Defendant negligently, recklessly, and/or intentionally omitted the risk of DCM and stressed the safety and health benefits of its Dog Foods in order to induce and mislead reasonable consumers, such as Plaintiff, to purchase the Dog Foods at premium prices.

12.    As a result of Defendant's conduct alleged herein, Plaintiff was injured when she paid the purchase price or a price premium for Defendant's Dog Foods that did not deliver what was promised or represented given the undisclosed risk for DCM presented by consumption of the Dog Foods.

13.    Defendant Pets Global, Inc. is incorporated and headquartered at 28334 Industry Drive in Valencia, California. Defendant also has manufacturing capabilities and facilities in Minnesota and South Dakota. All of the Dog Foods sold in the United States are manufactured, distributed, and sold by Defendant.

14.    Defendant formulated, developed, manufactured, labeled, distributed, marketed, advertised, and sold its Dog Foods throughout the United States, including in this District, during the Class Period.

15.    The advertising, labeling, and packaging for the Dog Foods, relied upon by Plaintiff, was prepared, reviewed, and/or approved by Defendant and its agents, and was disseminated by Defendant and its agents through marketing, advertising, packaging, and labeling that contained the misleading and deceptive statements,

representations, and omissions regarding the safety and health benefits associated with its grain-free diets, as alleged herein.

16.     The marketing, advertising, packaging, and labeling for the Dog Foods were designed to encourage consumers to purchase the Dog Foods and to mislead the reasonable consumer, *i.e.*, Plaintiff and the Classes, into purchasing the Dog Foods at a premium price.

17.     Defendant began manufacturing, distributing, selling, marketing, and advertising its grain-free Dog Foods in 2012, available at numerous retail and online outlets throughout the United States, including in California.

## FACTUAL ALLEGATIONS

**Canine Dilated Cardiomyopathy**

18.     Dilated cardiomyopathy (DCM) is the degeneration, or deterioration, of the heart muscle that results in an enlarged heart. The degeneration stretches the heart walls, which makes it more difficult for the heart to pump. Additionally, the degeneration may cause heart valves to leak, which can cause fluid build-up in the chest.[2]

19.     Signs of DCM include: rapid or labored breathing; restless sleeping; coughing or gagging; weakness; lethargy; collapse or fainting; decreased appetite;

---

[2] https://vcahospitals.com/know-your-pet/dilated-cardiomyopathy-dcm-in-dogs--indepth and https://www.fda.gov/animal-veterinary/animal-health-literacy/questions-answers-fda-center-veterinary-medicines-investigation-possible-connection-between-diet-and (last accessed Aug. 11, 2020).

6

weight loss; abdominal distention; depressed attitude; or sudden death.[3] DCM is the leading cause of congestive heart failure in dogs.[4]

20.    DCM is more common in certain large dog breeds, such as Boxers, Doberman Pinschers, Great Danes, Irish Wolfhounds, and Saint Bernards, but can also affect German Shepherds, Cocker Spaniels, English Springer Spaniels, and Portuguese Water Dogs.[5]

21.    An echocardiogram by a veterinary cardiologist can confirm a DCM diagnosis.

22.    DCM is rarely reversible, and dogs who develop it typically have it for life.[6]

---

[3] https://vcahospitals.com/know-your-pet/dilated-cardiomyopathy-dcm-in-dogs--indepth (last accessed Oct. 25, 2020);
https://www.vet.cornell.edu/hospitals/companion-animal-hospital/cardiology/canine-dilated-cardiomyopathy-dcm (last accessed Oct. 25, 2020).
[4] https://www.dogsnaturallymagazine.com/truth-grain-free-dog-foods-dcm/ (last accessed Oct. 25, 2020)
[5] https://vcahospitals.com/know-your-pet/dilated-cardiomyopathy-dcm-in-dogs--indepth (last accessed Aug. 11, 2020).
[6] https://vetspecialists.com/dilated-cardiomyopathy-in-dogs-dcm/ (last accessed Oct. 25, 2020).

7

**The FDA Investigation**

23.     In July 2018, the FDA announced its investigation into a potential link between DCM and "grain-free" pet foods, primarily based on an unusual number of reports of DCM in dog breeds not typically genetically prone to DCM.[7]

24.     Between December 1, 2018, and April 30, 2019, the FDA received 219 reports of canine DCM diagnosed by a veterinarian and/or a veterinary cardiologist. However, the true number of dogs with DCM is likely higher as the FDA did not include cases that did not have an official DCM diagnosis.[8]

25.     In the reports to the FDA, 90% of dogs were fed a grain-free diet and the majority of dogs ate food that identified peas and/or lentils as a main ingredient (meaning they were listed within the first ten ingredients).[9]

26.     The Defendant's Dog Foods were the second most frequently identified dog food brand fed in DCM cases reported to the FDA.[10]

27.     In September 2020, the FDA, through its Center for Veterinary Medicine, provided an update on its investigation at the Kansas State University Scientific Forum Exploring Causes of Dilated Cardiomyopathy in Dogs ("DCM

---

[7]https://www.fda/gov/animal-veterinary/cvm-updates/fda-investigating-potential-connection-between-diet-and-cases-canine-heart-disease (last accessed Oct. 25, 2020).
[8]https://www.fda.gov/animal-veterinary/outbreaks-and-advisories/fda-investigation-potential-link-between-certain-diets-and-canine-dilated-cardiomyopathy (last accessed Oct. 25, 2020).
[9] *Id.*
[10] *Id.*

CLASS ACTION COMPLAINT

Forum"). At the DCM Forum, the FDA reported that as of July 20, 2020, it had received over 1,100 reports of DCM in dogs. This is more than half of the total cardiac-related reports for dogs during the same time period.

28.    The FDA analysis of the reported cases, and its individual investigation of a subset of the cases, was driven by ingredients listed on labels of grain-free products sold by Defendant and other dog food manufacturers. The FDA ultimately concluded that there is "an association between certain diets and DCM."[11]

29.    In his opening remarks at the DCM Forum, the Director of the FDA Center for Veterinary Medicine, Dr. Steven M. Solomon, stated: "[w]hen there is a [safety] signal and an association that could impact human or animal health with a product we oversee, we have a public health obligation to share that information transparently."[12]

30.    However, Dr. Solomon also expressed concern for pet food manufacturers' "bottom line" during his opening remarks: "Although CVM's investigation must be driven by science and our public health mission, we are acutely aware that promoting transparency and public awareness may not be kind to everyone's bottom line."[13]

---

[11]https://www.ksvdl.org/resources/documents/dcm-forum/DCM-Forum-SolomonOpening-Remarks.pdf (last accessed Oct. 25, 2020).
[12] Id.
13 https://thecaninereview.com/2020/10/28/fda-announcement-links-diet-dcm-industry/ (last accessed November 1, 2020).

9

31.     Rather than disclose to consumers the association of DCM with its Dog Foods, Defendant's chose instead to obfuscate this fact, causing Plaintiff and Dog Food purchasers to place their pet's lives at unnecessary risk. Reasonable consumers would consider the knowledge of the linkage between their pet's consumption of Defendant's Dog Food and DCM to be material in making their purchasing decisions, and particularly at a premium price.

**Defendant's Disinformation Campaign**

32.     In fulfilling its mission as a public health and regulatory agency, the FDA felt compelled to publicly disclose the association between certain dog food diets and DCM because it found "a signal" together with an "association."

33.     Defendant chose an opposite course. After the FDA began reporting on the DCM issue, Defendant launched a disinformation campaign through its own Staff Veterinarian, Dr. Bradley Quest. Dr. Quest was a co-author of a June 15, 2020, paper appearing in the *Journal of Animal Science* ("JAS")[14] entitled "Review of canine dilated cardiomyopathy in the wake of diet-associated concerns."[15] The paper announced in its abstract that there is "no definitive association between diets with

---

[14] "Views expressed in papers published in JAS represent the opinions of the author(s) . . ." Journal of Animal Science, Instructions to Authors, https://academic.oup.com/jas/pages/General_Instructions (last accessed Oct. 25, 2020).
[15]  https://academic.oup.com/jas/article/98/6/skaa155/5857674 (last accessed Oct. 25, 2020).

CLASS ACTION COMPLAINT

specific characteristics, such as, but not limited to, grain-free diets and those containing legumes. . . to DCM in dogs."[16]

34.    Dr. Quest is among a five-member group known as BSM Partners ("BSM"), which co-authored the paper with him. BSM describes itself as "a full-service pet care research, consulting, and strategy-to-shelf product innovation firm" that partners with large companies, including Defendant, "to formulate, review and advise on the development of hundreds of new products each year, including grain-free" dog food, treats, and supplements."[17] On July 10, 2020, Dr. Quest along with BSM issued a corrected paper of the same title, finally revealing their conflict "in response to reader inquiries."[18] Yet, BSM's ultimate conclusion concerning diet-associated DCM has not changed, nor their opinion that the FDA reports are "speculation" and that its association determination is a "hypothesis" that "may be unsupported by evidence."[19]

**Defendant Failed to Disclose the Risk of DCM Linked to Feeding Dogs Grain-Free Diets on Its Packaging**

35.    On its packaging and its website, Defendant markets, represents, labels, and warrants its Dog Foods as safe and healthy; "Physiologically Tuned™;"

---

[16] *Id.*
[17] https://www.dcmresearchproject.org/ (last accessed Nov. 5, 2020).
[18] https://academic.oup.com/jas/article/98/7/skaa209/5869771 (last accessed Nov. 9, 2020).
[19] https://academic.oup.com/jas/article/98/7/skaa209/5869771 (last accessed Nov. 9, 2020).

"formulated to serve your canine companion's needs by delivering the highest quality, well balanced diets;" and claims its food is created by an "expert formulation team of veterinarians, PhD animal nutritionists and veterinary scientists." Defendant provided assurances that it is committed to the health and safety of dogs, as evidenced by its "rigorous" testing and quality assurance programs: "We conduct years of research and testing on all products before they are available to the public;" as well as its commitment to "Safety First." Consequently, Defendant had a duty to ensure these statements were true as it knew or should have known of the risk associated with grain-free dog foods, such as its Dog Foods, and DCM. Accordingly, Defendant also had a duty to disclose or otherwise notify consumers about the association of feeding dogs grain-free diets, such as its Dog Foods, with DCM.

36.    The false and misleading claims, warranties, representations, advertisements, and other marketing about the Dog Foods' safety and health benefits regarding the risk of DCM linked with feeding dogs grain-free diets are repeated throughout Defendant's website.

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28







Expertise

Together with Pets Global, Inc., BSM Partners comprises of a strong team of experts in the pet industry who hold multiple PHD's in Food Science and Animal Nutrition. They work with us to formulate our complete and balanced recipes and ensure we are 100% in compliance with the AAFCO and their nutritional requirements before our recipes are available to the public.

Rigorous Testing

We conduct years of research and testing on all products before they are available to the public. This includes ongoing tests on blood metabolites including whole blood and blood plasma taurine levels, as well as palatability trials, stool quality tests, and digestibility trials



37.    Despite the FDA's initial alert in July 2018 regarding the link between DCM and feeding dogs grain-free diets, such as Defendant's Dog Foods, and its February 2019 update, Defendant did not publicly address or otherwise respond to the FDA's concerns until June 2019. Even then, Defendant's response defensively

13

CLASS ACTION COMPLAINT

focused on touting higher taurine levels in its Dog Foods when compared to a competitor (lower taurine levels can be linked to DCM) and highlighted the fact that the FDA's alerts had not yet advised dietary changes.

38.    While Defendant has updated its response message and issued a "Commitment Letter," it has still nothing to disclose to consumers the risk of DCM on its packaging, and has instead continued to tout the health and safety of its Dog Foods on its website:

> We remain confident that the pet products created by Zignature's expert formulation team of veterinarians, PhD animal nutritionists and veterinary research scientists deliver the safest and most nutritious dietary standards available today.
>
> **All formulas are thoroughly tested and researched**
>
> We conduct years of rigorous research and testing on all products before they are available to the public. This includes ongoing tests on blood metabolites- including whole blood and blood plasma taurine levels, as well as palatability trials, stool quality tests and digestibility trials. This allows us to formulate the safest and most nutritious pet foods out there today.[20]

39.    Defendant's messaging is also confusing to concerned consumers who happen to discover the association between DCM and Defendant's grain-free Dog Foods, because its "Statement in Response to FDA Findings" concludes that the FDA "has no definitive answers yet." With no definitive answers on whether its Dog Foods are safe as advertised, Defendants continue to market and sell them without

---

[20] https://zignature.com/commitment-letter/ (last accessed Nov. 4, 2020)

any modification of its product labels or advertising that would disclose the DCM risk to consumers.

40.     Against the backdrop of the DCM risk, Defendant's marketing claim that its Dog Foods are "formulated to serve your canine companion's needs by delivering the highest quality, well balanced diets" is false and/or misleading to the reasonable consumer.

41.     As a result of Defendant's omissions and misrepresentations, a reasonable consumer would have no reason to suspect that Defendant's grain-free Dog Foods are associated with DCM, as determined by the FDA, without conducting his or her own scientific tests or reviewing third party scientific testing of these products.

42.     Defendant has been and remains aware consumers were concerned about the risks and dangers associated with DCM, as evidenced by its "Commitment Letter" and Statement on DCM" website postings. Defendant has been on notice that consumers reasonably expected them to ensure the Dog Foods were truly safe and healthy to feed to their dogs, or alternatively, to accurately disclose on its packaging the risks associated with feeding dogs its Dog Foods.

**Defendant's Omissions and Statements Violate California Laws**

43.     California laws are designed to ensure that a company's claims about its products are truthful and accurate. Defendant violated these state laws by failing to disclose and making partial misrepresentations to consumers about the risk of

DCM associated with Defendant's Dog Foods and by negligently, recklessly, and/or intentionally incorrectly claiming the Dog Foods are healthy and safe. Defendant misrepresented that the Dog Foods are healthy and safe, by representing and claiming the foods are "formulated to serve your canine companion's needs by delivering the highest quality, well balanced diets," are "Physiologically Tuned™," and are subject to "rigorous" testing and quality assurance, including "years of research and testing… before they are available to the public" and are created by an "expert formulation team of veterinarians, PhD animal nutritionists and veterinary scientists."

44.    Defendant's marketing and advertising campaign has been sufficiently lengthy in duration, and widespread in dissemination, that it would be unrealistic to require Plaintiff to plead reliance upon each advertised misrepresentation.

45.    Defendant has engaged in this extensive advertising campaign to convince potential customers the Dog Foods were healthy and safe, despite the FDA's concerns about the association of DCM with feeding dogs grain-free diets, such as Defendant's Dog Foods.

**Plaintiff's Reliance Was Reasonable and Foreseen by Defendant**

46.    Plaintiff reasonably relied on Defendant's own claims, warranties, representations, advertisements, and other marketing concerning the particular ingredients, qualities, and characteristics of the Dog Foods.

47.    Plaintiff relied upon Defendant's false and/or misleading representations alleged herein, including those asserted on its the website and the Dog Foods' labels and packaging in making her purchasing decisions.

48.    Any reasonable consumer would consider the labeling of a product (as well as the other false and/or misleading representations alleged herein) when deciding whether to purchase it.  Here, Plaintiff relied on the specific statements and misrepresentations by Defendant that the Dog Foods were healthy and safe, due to Defendant's representations and claims that the foods were "Physiologically Tuned™" and "formulated to serve your canine companion's needs by delivering the highest quality, well balanced diets," and that they were subject to "rigorous" testing and quality assurance, including "years of research and testing… before they are available to the public" and are created by an "expert formulation team of veterinarians, PhD animal nutritionists and veterinary scientists."

49.    Plaintiff also relied upon Defendant's omission and partial misrepresentations to consumers about the risk associated with feedings dogs grain-free diets, such as Defendant's Dog Foods, with DCM, when deciding to purchase the Dog Foods.

50.    Defendant knew consumers, such as Plaintiff, trusted and relied on it to ensure the Dog Foods were safe and healthy and as represented on their packaging, advertisements, marketing, and website.

CLASS ACTION COMPLAINT

**Defendant's Knowledge and Notice of Its Breaches of Its Express and Implied Warranties**

51.    Defendant had sufficient notice of its breaches of express and implied warranties. Defendant has, and had, exclusive knowledge of the physical and chemical makeup of the Dog Foods.

52.    Additionally, Defendant was put on notice of its breaches by Plaintiff's demand letter, which she sent to Defendant on February 27, 2020. The demand letter informed Defendant of the risk associated with feeding dogs grain-free diets, such as Defendant's Dog Foods, and DCM. It also identified Defendant's failure to disclose, warn, or otherwise notify consumers about such risk.  Consequently, Plaintiff, and other reasonable consumers, trusted Defendant's claims and assurances that its Dog Foods were healthy and safe.

53.    On March 27, 2020, Defendant acknowledged receipt of Plaintiff's demand letter and responded to her letter through its insurance company, Liberty Mutual Insurance.

**Privity Exists with Plaintiff and the Proposed Classes**

54.    Defendant knew that consumers such as Plaintiff and the Class members would be the end purchasers of the Dog Foods and the target of its advertising and statements.

CLASS ACTION COMPLAINT

55.    Defendant intended that the warranties, packaging, labels, advertising, statements, and representations would be considered by the end purchasers of the Dog Foods, including Plaintiff and the Class members.

56.    Defendant directly marketed to Plaintiff and the Class members through statements on its website, packaging, labels, and advertising.

57.    Plaintiff and the Class members are the intended beneficiaries of Defendant's expressed and implied warranties.

## **CLASS ACTION ALLEGATIONS**

58.    Plaintiff brings this action individually and on behalf of the following Class pursuant to Rules 23(a) and 23(b)(2) and (3) of the Federal Rules of Civil Procedure:

> All persons who are citizens of the United States who, from May 1, 2018, to the present, purchased the Dog Foods for household or business use, and not for resale (the "Class").

59.    Plaintiff also brings this action individually and on behalf of the following Subclasses pursuant to Rule 23(a) and 23(b)(2) and (3) of the Federal Rules of Civil Procedure:

> All persons who are citizens of California who, from May 1, 2018, to the present, purchased the Dog Foods for household or business use, and not for resale (the "California Subclass").

> All persons who are citizens of Massachusetts who, from May 1, 2018, to the present, purchased the Dog Foods for household or business use, and not for resale (the "Massachusetts Subclass");

60.    Excluded from the Class and Subclasses (collectively, "Classes")  are the Defendant, any parent companies, subsidiaries, and/or affiliates, officers, directors, legal representatives, employees, co-conspirators, all governmental entities, and any judge, justice, or judicial officer presiding over this matter.

61.    This action is brought and may be properly maintained as a class action. There is a well-defined community of interests in this litigation and the members of the Classes are easily ascertainable.

62.    The members in the proposed Classes are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of all Class members in a single action will provide substantial benefits to the parties and Court.

63.    Questions of law and fact common to Plaintiff and the Classes include, but are not limited to, the following:

    (a)    whether Defendant owed a duty of care to Plaintiff and the Classes;

    (b)    whether Defendant knew or should have known that the Dog Foods were associated with a risk of DCM;

    (c)    whether Defendant wrongfully represented and continues to represent that the Dog Foods are safe and healthy;

    (d)    whether Defendant wrongfully represented and continues to represent that the Dog Foods are safe and healthy; "Physiologically Tuned™;" and "formulated to serve your

20

canine companion's needs by delivering the highest quality, well balanced diets";

(e)    whether Defendant wrongfully represented and continues to represent that the manufacturing of the Dog Foods are subject to "rigorous" testing and quality control;

(f)    whether Defendant wrongfully failed to state the Dog Foods are linked to a risk of DCM;

(g)    whether Defendant's representations and claims made in its packaging, advertisements, marketing, and warranties are false, misleading, and deceptive;

(h)    whether those representations are likely to deceive a reasonable consumer;

(i)    whether a reasonable consumer would consider the risk of DCM as a material fact when purchasing dog food;

(j)    whether Defendant knew those representations were false, misleading, and deceptive;

(k)    whether Defendant continues to disseminate those representations despite knowledge they are false, misleading, and deceptive;

(l)    whether a claim or representation that a product is safe and healthy, and not associated with a risk of DCM is material to a reasonable consumer;

(m)    whether Defendant's representations and claims on the Dog Foods' packaging are likely to mislead, deceive, confuse, or confound consumers acting reasonably;

(n)    whether Defendant violated California state laws;

(o)    whether Defendant breached its express warranties;

(p)    whether Defendant breached its implied warranties;

(q)    whether Defendant engaged in unfair trade practices;

(r)    whether Defendant engaged in false advertising;

(s)    whether Defendant made negligent and/or fraudulent misrepresentations and/or omissions;

(t)    whether Plaintiff and the members of the Classes are entitled to actual, statutory, and punitive damages; and

(u)    whether Plaintiff and members of the Classes are entitled to declaratory and injunctive relief.

64.    Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff individually and on behalf of the other members of the Classes. Identical statutory violations and business practices and

harms are involved. Individual questions, if any, are not prevalent in comparison to the numerous common questions that dominate this action.

65.     Plaintiff's claims are typical of those of the members of the Classes in that they are based on the same underlying facts, events, and circumstances relating to Defendant's conduct.

66.     Plaintiff will fairly and adequately represent and protect the interests of the Classes, has no interests incompatible with the interests of the Classes, and has retained counsel competent and experienced in class action, consumer protection, and false advertising litigation.

67.     Class treatment is superior to other options for resolution of the controversy because the relief sought for each member of the Classes is small such that, absent representative litigation, it would be infeasible for members of the Classes to redress the wrongs done to them.

68.     Questions of law and fact common to the Classes predominate over any questions affecting only individual members of the Classes.

69.     As a result of the foregoing, class treatment is appropriate.

## CLAIMS FOR RELIEF

### COUNT I

**Fraud by Omission**
**Against Defendant on Behalf of the Classes**

70.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

CLASS ACTION COMPLAINT

71.    Defendant concealed from and failed to disclose to Plaintiff and the Class that its Dog Foods were associated with DCM.

72.    Defendant was under a duty to disclose to Plaintiff and the Classes the true ingredients, qualities, characteristics, and suitability for consumption of the Dog Foods because: (1) Defendant was in a superior position to know the true state of facts about its products; (2) Defendant was in a superior position to know the actual ingredients, qualities, and characteristics of its Dog Foods; and (3) Defendant knew Plaintiff and the Classes could not reasonably have been expected to learn or discover that the Dog Foods were misrepresented in the packaging, labels, advertising, and website prior to purchasing the Dog Foods.

73.    The facts concealed or not disclosed by Defendant to Plaintiff and the Classes are material because a reasonable consumer would have considered them to be important in deciding whether to purchase the Dog Foods.

74.    Plaintiff and the Classes justifiably relied on Defendant's omissions to their detriment.  The detriment is evident from the true ingredients, quality, and characteristics of the Dog Foods, which is inferior to how Defendant marketed and represented the Dog Foods.

75.    As a direct and proximate result of Defendant's conduct, Plaintiff and the Classes have suffered actual damages in that they purchased Dog Foods that are worth less than the price they paid and that they would not have purchased at all had

they known of the association between grain-free dog foods, such as Defendant's Dog Foods, and DCM.

76.    Plaintiff and the Classes seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

## COUNT II

### Fraudulent Misrepresentation Against Defendant on Behalf of the Classes

77.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

78.    Defendant falsely represented to Plaintiff and the Classes that its Dog Foods are safe and healthy; "formulated to serve your canine companions' needs by delivering the highest quality, well balanced diet; and "Physiologically Tuned™."

79.    Defendant intentionally and knowingly made these misrepresentations to induce Plaintiff and the Classes to purchase its Dog Foods.

80.    Defendant knew its representations about its Dog Foods were false in that the Dog Foods were associated with a risk of DCM. Defendant allowed its packaging, labels, marketing, and website to intentionally mislead consumers, such as Plaintiff and the Classes.

81.    Plaintiff and the Classes did in fact rely on these misrepresentations and purchased the Defendant's Dog Foods to their detriment. Given the deceptive manner in which Defendant marketed, represented and otherwise promoted the Dog

Foods, Plaintiff and the Classes' reliance on Defendant's misrepresentations was justifiable.

82.    As a direct and proximate result of Defendant's conduct, Plaintiff and the Classes have suffered actual damages in that they purchased Dog Foods that were worth less than the price they paid and that they would not have purchased at all had they known of the association between grain-free dog foods, such as Defendant's Dog Foods, and DCM.

83.    Plaintiff and the Classes seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

## COUNT III

### Breach of Implied Warranty of Merchantability
### Against Defendant on Behalf of the Classes

84.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

85.    Defendant is a merchant engaging in the sale of goods to Plaintiff and the Classes.

86.    There was a sale of goods from Defendant to Plaintiff and the Classes.

87.    At all times mentioned herein, Defendant manufactured or supplied the Dog Foods, and prior to the time the Dog Foods were purchased by Plaintiff and the Classes, Defendant impliedly warranted to them that the Dog Foods were of merchantable quality, fit for their ordinary use (consumption by dogs), and

conformed to the promises and affirmations of fact made on the Dog Foods' packaging and marketing, including that the food was safe and healthy; "formulated to serve your canine companions' needs by delivering the highest quality, well balanced diet; and "Physiologically Tuned™."

88.    Plaintiff and the Classes relied on Defendant's promises and affirmations of fact when they purchased the Dog Foods.

89.    The Dog Foods were not fit for their ordinary use, consumption by dogs, and did not conform to Defendant's affirmations of fact and promises as they failed to mention the association between grain-free dog foods, such as Defendant's Dog Foods, and DCM, facts a reasonable consumer would consider material.

90.    Defendant breached the implied warranties by selling Dog Foods that failed to conform to the promises or affirmations of fact made on the packaging and marketing as each product was associated with a risk of DCM.

91.    Defendant was on notice of this breach as it was aware of the association between grain-free dog foods, such as Defendant's Dog Foods, and DCM.

92.    Privity exists because Defendant impliedly warranted to Plaintiff and the Classes through the warranting, packaging, advertising, marketing, and labeling that its Dog Foods were safe and healthy and by failing to mention the association between grain-free dog foods, such as Defendant's Dog Foods, and DCM.

93.    As a direct and proximate result of Defendant's conduct, Plaintiff and the Classes have suffered actual damages in that they purchased Dog Foods that were worth less than the price they paid and that they would not have purchased at all had they known of the risk associated between grain-free dog foods, such as Defendant's Dog Foods, and DCM.

94.    Plaintiff and the Classes seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendant's failure to deliver goods conforming to their implied warranties and resulting breach.

## COUNT IV

**Unjust Enrichment**
**Against Defendant on Behalf of the Classes**

95.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

96.    Substantial benefits have been conferred on Defendant by Plaintiff and the Classes through the purchase of the Dog Foods. Defendant knowingly and willingly accepted and enjoyed these benefits.

97.    Defendant either knew or should have known the payments rendered by Plaintiff and the Classes were given and received with the expectation that the Dog Foods would have the ingredients, qualities, characteristics, and suitability for consumption as represented and warranted by Defendant. As such, it would be

inequitable for Defendant to retain the benefit of the payments under these circumstances.

98.    Defendant's acceptance and retention of these benefits under the circumstances alleged herein make it inequitable for Defendant to retain the benefits without payment of the value to Plaintiff and the Classes.

99.    Plaintiff and the Classes are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant, plus interest thereon.

100.    Plaintiff and the Classes seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

## **COUNT V**

**Violations of California's Consumer Legal Remedies Act, California Civil Code §§1750, *et seq.*, Against Defendant on Behalf of the Classes**

101.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

102.    Plaintiff and each Class member is a "consumer," as that term is defined in California Civil Code section 1761(d).

103.    The Dog Foods are "goods," as that term is defined in California Civil Code section 1761(a).

CLASS ACTION COMPLAINT

104.   Defendant is a "person" as that term is defined in California Civil Code section 1761(c).

105.   Plaintiff and each proposed Class member's purchase of Defendant's products constituted a "transaction," as that term is defined in California Civil Code section 1761(e).

106.   Defendant's conduct alleged herein violates the following provisions of California's Consumer Legal Remedies Act (the "CLRA"):

(a)   California Civil Code section 1770(a)(5), by negligently, recklessly, and/or intentionally representing that the Dog Foods are safe and healthy and by failing to mention the risk associated between grain-free dog foods, such as Defendant's Dog  Foods, and DCM;

(b)   California Civil Code section 1770(a)(7), by negligently, recklessly, and/or intentionally representing that the Dog Foods were of a particular standard, quality, or grade, when they were of another;

(c)   California Civil Code section 1770(a)(9), by negligently, recklessly, and/or intentionally advertising the Dog Foods with intent not to sell them as advertised; and

(d)    California Civil Code section 1770(a)(16), by representing that the Dog Foods have been supplied in accordance with previous representations when they have not.

107.    On May 18, 2020, counsel for Plaintiff and the Classes sent Defendant written notice (via U.S. certified mail, return receipt requested) that it is in violation of the CLRA by selling its Dog Foods while claiming, among other things, that they are healthy and safe and "formulated to serve your canine companions' needs by delivering the highest quality, well balanced diets."

108.    Defendant failed to provide appropriate relief for its violations of CLRA sections 1770(a)(5), (7), (9), and (16) within thirty days of receipt of Plaintiff's May 18, 2020, notification.  In accordance with CLRA section 1782(b), Plaintiff and the Classes are entitled, under CLRA section 1780, to recover and obtain the following relief for Defendant's violations of CLRA sections 1770(a)(5), (7), (9), and (16):

(a)    Actual damages under CLRA section 1780(a)(1);

(b)    Restitution of property under CLRA section 1780(a)(3);

(c)    Punitive damages under CLRA section 1780(a)(4) and because Defendant has engaged in fraud, malice, or oppression; and

(d)    Any other relief the Court deems proper under CLRA section 1780(a)(5).

109.   As a direct and proximate result of these violations, Plaintiff and the Classes have been harmed, and that harm will continue unless Defendant is enjoined from using the misleading marketing described herein in any manner in connection with the advertising and sale of the Dog Foods.

110.   Plaintiff seeks an award of attorneys' fees pursuant to, inter alia, California Civil Code section 1780(e) and California Code of Civil Procedure section 1021.5.

<u>**COUNT VI**</u>
**Violations of the Unfair Competition Law,**
**California Business & Professions Code §§17200, *Et Seq.*,**
**Against Defendant on Behalf of the Classes**

111.   Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

112.   The Unfair Competition Law prohibits any "unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code §17200.

**Fraudulent**

113.   Defendant's statements that its Dog Foods are safe and healthy, "formulated to serve your canine companions' needs by delivering the highest quality, well balanced diets," and "Physiologically Tuned™" are literally false and likely to deceive the public, as is Defendant's failure to mention the risk associated between grain-free dog foods, such as Defendant's Dog Foods, and DCM.

**Unlawful**

114.   As alleged herein, Defendant has advertised its Dog Foods with false or misleading claims, such that Defendant's actions as alleged herein violate at least the following laws:

- The CLRA, California Business & Professions Code sections 1750, *et seq.*; and

- The False Advertising Law, California Business & Professions Code sections 17500, *et seq.* (the "FAL").

**Unfair**

115.   Defendant's conduct with respect to the labeling, packaging, advertising, marketing, and sale of its Dog Foods is unfair because Defendant's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of its conduct, if any, does not outweigh the gravity of the harm to its victims.

116.   Defendant's conduct with respect to the labeling, packaging, advertising, marketing, and sale of its Dog Foods is also unfair because it violates public policy as declared by specific constitutional, statutory, or regulatory provisions, including, but not limited to, the FAL and the CLRA.

117.   Defendant's conduct with respect to the labeling, packaging, advertising, marketing, and sale of its Dog Foods is also unfair because the consumer

injury is substantial, not outweighed by benefits to consumers or competition, and not one consumers, themselves, can reasonably avoid.

118.   In accordance with California Business & Professions Code section 17203, Plaintiff seeks an order enjoining Defendant from continuing to conduct business through fraudulent or unlawful acts and practices and to commence a corrective advertising campaign.   Defendant's conduct is ongoing and continuing, such that prospective injunctive relief is necessary.

119.   On behalf of herself and the Classes, Plaintiff also seeks an order for the restitution of all monies from the sale of Defendant's Dog Foods, which were unjustly acquired through acts of fraudulent, unfair, or unlawful competition.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, pray for judgment against the Defendant as to each and every count, including:

A.   An order declaring this action to be a proper class action, appointing Plaintiff and her counsel to represent the Classes, and requiring Defendant to bear the costs of class notice;

B.   An order enjoining Defendant from selling the Dog Foods until full disclosure of the risk associated between grain-free dog foods, such as Defendant's Dog Foods, and DCM appears on all labels, packaging, and marketing;

CLASS ACTION COMPLAINT

C.    An order enjoining Defendant from selling the Dog Foods in any manner suggesting or implying that they are healthy and safe for consumption;

D.    An order requiring Defendant to engage in a corrective marketing campaign and engage in any further necessary affirmative injunctive relief, such as recalling existing products;

E.    An order awarding declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Defendant from continuing the unlawful practices alleged herein, and injunctive relief to remedy Defendant's past conduct;

F.    An order requiring Defendant to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, untrue or misleading advertising, or a violation of California law, plus pre- and post-judgment interest thereon;

G.    An order requiring Defendant to disgorge or return all monies, revenues, and profits obtained by means of any wrongful or unlawful act or practice;

H.    An order requiring Defendant to pay all actual and statutory damages permitted under the counts alleged herein;

I.    An order requiring Defendant to pay punitive damages on any count so allowable;

J.    An order awarding attorneys' fees and costs, including the costs of pre-suit investigation, to Plaintiff and the Classes; and

CLASS ACTION COMPLAINT

K.     An order providing for all other such equitable relief as may be just and proper.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: November 9, 2020          Respectfully submitted,

                                  LOCKRIDGE GRINDAL NAUEN P.L.L.P.

                                  By: /s/ Rebecca A. Peterson
                                  ROBERT K. SHELQUIST
                                  REBECCA A. PETERSON, #241858
                                  100 Washington Avenue South, Suite 2200
                                  Minneapolis, MN 55401
                                  Telephone: (612) 339-6900
                                  Facsimile: (612) 339-0981
                                  E-mail: rapeterson@locklaw.com
                                       rkshelquist@locklaw.com

                                  Jon W. Borderud, #134355
                                  LAW OFFICES OF JON BORDERUD
                                  1116 E. Cota Street
                                  Santa Barbara, CA 93103
                                  Telephone: (310) 621-7004
                                  E-mail: borderudlaw@cox.net
                                  Kenneth A. Wexler
                                  Michelle Perkovic
                                  WEXLER WALLACE LLP
                                  55 W. Monroe Street, Suite 3300
                                  Chicago, Illinois 60603
                                  Telephone: (312) 346-2222
                                  E-mail: kaw@wexlerwallace.com
                                       mp@wexlerwallace.com

CLASS ACTION COMPLAINT

Mark J. Tamblyn, #179272
WEXLER WALLACE LLP
333 University Avenue, Suite 200
Sacramento, California 95825
Telephone: (916) 565-7692
Facsimile:  (312) 346-0022
E-mail:  mjt@wexlerwallace.com

*Attorneys for Plaintiff and the Proposed Classes*

CLASS ACTION COMPLAINT